[Cite as *State v. Toles*, 2020-Ohio-4267.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-07-018 |
| | : | O P I N I O N |
| - vs - | | 8/31/2020 |
| | : | |
| MARCUS TOLES, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20180149

Stephen J. Pronai, Madison County Prosecuting Attorney, Rachel M. Price, 59 North Main Street, London, Ohio 43140, for appellee

Victoria Bader, Madison County Assistant State Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Marcus Toles, appeals his conviction in the Madison County Court of Common Pleas after a jury found him guilty of eight counts of trafficking in drugs and one count of possession of drugs. For the reasons outlined below, we affirm Toles' conviction.

{¶ 2} On September 13, 2018, the Madison County Grand Jury returned a nine-

count indictment charging Toles with eight counts of trafficking in drugs in violation of R.C. 2925.03(A)(1), two of which were alleged to have occurred in the vicinity of a juvenile, and one count of possession of drugs in violation of R.C. 2925.11(A).

{¶ 3}  On October 11, 2018, Toles appeared at his arraignment and entered a plea of not guilty.  The trial court determined that Toles was indigent and appointed Attorney Jeffrey Hunter to represent him.  Turning then to the state's position on bond, the state noted that this was "a case that was previously pending, dismissed, and reindicted (sic)." The state then recommended the trial court impose "the same conditions and same bond" as the trial court had done previously; a recognizance bond with "random drug screens, as well as house arrest."

{¶ 4}  Agreeing with the state's recommendation, the trial court released Toles on a recognizance bond and placed him on house arrest.  The trial court then scheduled the matter for an "informal" pretrial hearing on November 2, 2018, a "formal" pretrial hearing on November 27, 2018, and a jury trial to be held on December 18, 2018.  There is no dispute that Attorney Hunter was the same attorney who had represented Toles in the previously pending case that had been dismissed.

{¶ 5}  On November 2, 2018, the trial court held an informal pretrial hearing.  During this hearing, the trial court asked the parties if discovery had begun.  To this, Toles' trial counsel, Attorney Hunter, notified the trial court that although this was a "new indictment," the charges were based "upon the same facts" that he had "previously received discovery on."  Hunter then informed the trial court that he had just spoken with the state, and "there aren't any new witnesses except for a couple of people who are going to be lab people." Hunter then notified the trial court that he would be "send[ing] over a supplemental discovery request in light of that," but that discovery had otherwise "been completed, Your Honor."

- 2 -

{¶ 6} On November 27, 2018, the trial court held a formal pretrial hearing. During this hearing, Toles notified the trial court that he had rejected the state's most recent plea offer. Toles also notified the trial court that it was his intent to go forward with the jury trial scheduled for December 18, 2018.

{¶ 7} On December 17, 2018, the day before the jury trial was scheduled to begin, Toles' trial counsel, Attorney Hunter, filed a motion to continue. In support of his motion, Hunter argued that he needed additional time to prepare because he had "just come to the knowledge" of three witnesses who Toles claimed would "be vital to a segment of the defense in this matter."

{¶ 8} The trial court held a hearing on Attorney Hunter's motion later that day. During this hearing, Hunter notified the trial court that he had moved for a continuance so that he could interview three witnesses Toles had disclosed to him "last week" while they were speaking on the phone. After hearing from Hunter, the trial court then turned to Toles and asked Toles why he was only now disclosing these three witnesses to his trial counsel. To this, Toles responded:

> MR. TOLES: I apologize for the delay. One reason is, as you know, I'm on house arrest. It's hard for me to get my bill and stuff paid, my phone bill, so I've been having a hard time contacting them, all those things together, to discuss everything. Or even getting in half of the information that I needed to defend myself has been hard with communication.

{¶ 9} The trial court then advised Toles as follows:

> THE COURT: Mr. Toles, this case has been pending for a significant period of time. Some of that I recognize is the result of the State reindicting (sic) the case. And this is the first continuance in this case. * * * I'm going to grant the motion to continue this, but I want to be crystal clear on this. If you have issues or witnesses or occurrences that your attorney needs to know about in order to present the best case he can for you, it is incumbent upon you to provide him that information in a timely fashion. And candidly, * * *, for him to just now be hearing about it is unacceptable. * * * Are we on the same page?

- 3 -

MR. TOLES: Yes, sir.

THE COURT: There's not going to be another one of these after today.

MR. TOLES: Thank you.

THE COURT: If you hit him with last-minute information, that's going to be on you, and you're going to live with it. * * * You understand that?

MR. TOLES: Yes, sir.

{¶ 10} The trial court then granted Hunter's motion for a continuance and scheduled the jury trial to March 5, 2019. After granting Hunter's motion, Toles then executed a waiver of his speedy-trial rights that waived his right to a speedy trial "even if it is to be continued indefinitely." The trial court then read the signed waiver into the record and determined that Toles' waiver of his speedy-trial rights was knowingly, intelligently, and voluntarily entered.

{¶ 11} On January 4, 2019, the state filed motion requesting Toles' bond be revoked. In support of this motion, the state argued that Toles had been observed driving under circumstances that were not consistent with the terms of his house arrest. Four days later, on January 8, 2019, the trial court issued a capias and revoked Toles' bond. The trial court then held a bond hearing on January 22, 2019. Following this hearing, the trial court set Toles' bond at $2,500 cash/surety. Toles posted bond on January 24, 2019 and was placed back on house arrest.

{¶ 12} On February 7, 2019, Attorney Hunter filed a motion to withdraw as Toles' trial counsel. In support of this motion, Hunter argued that he should be permitted to withdraw because Toles: (1) "failed to follow through on steps necessary to zealously defend this matter;" (2) "repeatedly expressed dissatisfaction with counsel in hearings on the record;" and (3) "continued to file self styled motions without consultation with counsel." Hunter alleged that this has all led to a loss of "all communications" with Toles. Hunter also alleged

- 4 -

that "circumstances have arisen that ethically prevent [him] from fulfilling my responsibility to represent the defendant in a zealous manner."

{¶ 13} On February 12, 2019, the trial court held a hearing on Attorney Hunter's motion to withdraw. During this hearing, Hunter informed the trial court that he felt compelled to file his motion to withdraw for several reasons, which included the following:

> MR. HUNTER: Okay. Let me just – generally speaking, I've been asked to put forth a defense, and certain things, that when I check them out and interview witnesses regarding certain events, I found them to be totally contrary to how they were conveyed to me, put it that way, and not substantiated.

{¶ 14} Hearing no objection from the state, the trial court granted Hunter's motion to withdraw as Toles' trial counsel. The trial court then appointed Toles with a new attorney, Attorney Jesse Stacy. The trial court filed its entry granting Hunter's motion to withdraw on February 14, 2019, 19 days before the jury trial was scheduled to begin on March 5, 2019.

{¶ 15} On March 5, 2019, Toles, along with his new trial counsel, Attorney Stacy, appeared before the trial court for the start of trial. Opening the proceedings, the trial court asked the parties if there were any issues that needed to be addressed prior to voir dire. To this, Stacy moved for a continuance so that he could track down three witnesses Toles had recently disclosed to him, one "a couple days" before trial, one the day before trial, and one that morning prior to the start of trial. Stacy then stated, "So we're going to have Mr. Toles request a continuance to come across these individuals."

{¶ 16} The trial court denied Attorney Stacy's motion for a continuance. Explaining its reasoning for denying Stacy's motion, the trial court turned to Toles and stated:

> THE COURT: I guess we've been through this dance before. * * * Providing him names, two witnesses that you think are important for today's trial, one yesterday and one this morning, is simply unacceptable. You put yourself in that boat. No continuances are being granted on that basis. You went down this road with Mr. Hunter, and now you're doing it with Mr. Stacy.

{¶ 17} The trial court then stated:

> THE COURT: By the way, * * * Mr. Stacy, you are certainly welcome to issue subpoenas for those witnesses. Quite understandably, the likelihood of you getting them served and here to testify is remote.
>
> MR. STACY: Certainly.
>
> THE COURT: But that's the position you've been put in by Mr. Toles, who's been aware of this trial date for a long time.

{¶ 18} On March 6, 2019, the jury returned a verdict finding Toles guilty of all nine offenses. After the jury returned its verdict, the trial court proceeded immediately to sentencing and sentenced Toles to a total aggregate term of five years in prison; two consecutive 18-month prison terms on the two drug trafficking offenses that were committed in the vicinity of a juvenile, followed by two consecutive 12-month prison terms on two of the remaining six drug trafficking offenses, with an additional five concurrent 12-month prison terms on the remaining five drug trafficking and possession of drugs offenses. The trial court also ordered Toles to pay court costs and notified Toles that he would be subject to an optional three-year postrelease control term upon his release from prison.

{¶ 19} Explaining its sentencing decision, the trial court noted that it had found the eight drug trafficking offenses were committed "as part of an organized criminal activity." The trial court also found Toles exhibited a "high risk of recidivism." This is because, as noted by the trial court at sentencing:

> THE COURT: * * * You have a prior history of adult criminal convictions. While you do not have any prior juvenile adjudications, your prior adult history dates back to 2014. You do have a prior felony conviction for attempted carrying a concealed weapon. You have not responded favorably to the sanctions that have been imposed. You've had multiple probation violations on different cases that have occurred out of different courts. And you've not – at least two of those resulted in unsuccessful termination of probations.

{¶ 20} The trial court also noted as part of its sentencing entry that Toles "has

demonstrated a pattern of drug abuse involving marijuana," that Toles "was on probation at the time of committing the offense," and that Toles "violated the terms and conditions of bond as set by this Court." Toles now appeals his conviction, raising three assignments of error for review. For ease of discussion, we will address Toles' third assignment of error out of order.

{¶ 21} Assignment of Error No. 1:

{¶ 22} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED MARCUS TOLES' REQUEST FOR A REASONABLE CONTINUANCE.

{¶ 23} In his first assignment of error, Toles argues the trial court erred by denying Attorney Stacy's motion for a continuance made on the morning of trial. We disagree.

{¶ 24} "A trial court has broad discretion in determining whether to grant or deny a continuance." *State v. Bullock*, 12th Dist. Clermont No. CA2005-04-031, 2006-Ohio-598, ¶ 12, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). This court will not reverse the trial court's decision to deny a defendant's motion for a continuance absent an abuse of discretion. *State v. Glowka*, 12th Dist. Butler No. CA2012-10-203, 2013-Ohio-3080, ¶ 8. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 181. There is no "bright-line test" for determining whether a continuance should be granted. *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 19. However, as noted by the Ohio Supreme Court, the trial court should be guided by consideration of several factors, "including the length of the requested delay, whether other continuances have been requested and received, the inconveniences likely to result, the reasons for the delay, and whether the defendant contributed to the circumstances giving rise to the need for delay." *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 18.

- 7 -

{¶ 25} Toles argues that it was an abuse of discretion for the trial court to deny Stacy's motion for a continuance when considering Toles had "just informed him of three potential witnesses" in the days leading up to his trial, one "a couple days" before trial, one the day before trial, and one that morning prior to the start of trial. Toles supports this claim by noting the jury trial was scheduled to begin just 19 days after the trial court had appointed Attorney Stacy to represent him and only one week after Stacy had "first met" with him. This, according to Toles, gave him "limited opportunity to discuss his case and possible witnesses" with Stacy since his "first appearance with new counsel was at the start of trial." However, while it may be true that Attorney Stacy had been appointed to represent Toles just 19 days prior to when the jury trial was scheduled to begin, the record is clear that Toles did not identify these three witnesses when he first met with, or spoke to, his newly appointed trial counsel.

{¶ 26} The record instead indicates that Toles opted to notify Stacy of these three witnesses over three separate days leading up to his trial; one "a couple days" before trial, one the day before trial, and one that morning prior to the start of trial. By that time the charges against Toles had been pending for nearly six months, during which time Toles' original trial counsel, Attorney Hunter, was granted a continuance to interview and subpoena three other witnesses Toles had claimed would be vital to his defense. But, after interviewing these witnesses, Hunter was permitted to withdraw when those witnesses provided a version of events that was contrary to the version offered to him by Toles.

{¶ 27} Given this backdrop, we find no abuse of discretion in the trial court's decision denying Attorney Stacy's motion for a continuance. Again, as the trial court stated when denying Stacy's motion:

> THE COURT: I guess we've been through this dance before. *
> * * Providing him names, two witnesses that you think are

important for today's trial, one yesterday and one this morning, is simply unacceptable. You put yourself in that boat. No continuances are being granted on that basis. You went down this road with Mr. Hunter, and now you're doing it with Mr. Stacy.

{¶ 28} The trial court then notified Stacy that its decision was not based on anything he had done in his representation of Toles, but that it was nevertheless the position he had "been put in" by Toles since Toles "was aware of this trial date for a long time."

{¶ 29} We agree with the trial court's decision. Toles' actions leading up to his trial appear to be nothing more than his latest attempt to delay the jury trial to some future date. However, given the fact that Toles waived his right to a speedy trial "even if it is to be continued indefinitely," what Toles hoped to accomplish by having his trial continued is unclear. But, whatever Toles' motives may have been, the trial court did not abuse its discretion by denying Attorney Stacy's motion for a continuance made on the morning of trial. That is to say, the trial court's decision to deny the motion was not unreasonable, arbitrary, or unconscionable. The trial court's decision was instead certainly reasonable given the fact that it was Toles, and Toles alone, who contributed to the circumstances that led Stacy to move for a continuance that morning. Therefore, finding no error in the trial court's decision to deny Attorney Stacy's motion for a continuance made on the morning of trial, Toles' first assignment of error lacks merit and is overruled.

{¶ 30} Assignment of Error No. 3:

{¶ 31} MARCUS TOLES WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; ARTICLE I, SECTION 10, OHIO CONSTITUTION.

{¶ 32} In his third assignment of error, Toles argues Attorney Stacy provided him ineffective assistance by failing to move for a continuance sometime prior to the morning of trial. In support of this claim, Toles argues that if Stacy had moved for a continuance prior

- 9 -

to trial he "would have had the opportunity to fully investigate and explore possible defenses." This is because, according to Toles, Stacy "was aware of at least one potential witness several days before the trial began." We disagree.

{¶ 33} While Toles claims "competent counsel" would have moved for a continuance sometime prior to the morning of trial in order to "diligently" investigate this potential witness, there is nothing in the record to indicate the trial court would have granted such a motion had Stacy made the motion any earlier. That is to say, there is nothing in the record to indicate the trial court would have continued the trial if Stacy had moved for a continuance after learning of one potential witness "several days" before the trial began as opposed to the morning of trial after learning of three potential witnesses. The trial court in fact specifically warned Toles that a continuance would not be granted if he provided his trial counsel "with last-minute information" again after granting his original trial counsel, Attorney Hunter, a continuance under nearly identical circumstances. Therefore, because there is nothing in the record to indicate the trial court would have continued the trial if Stacy had only moved for a continuance sometime prior to the morning of trial, we find no merit to Toles' ineffective assistance of counsel claim. Accordingly, finding no merit to Toles' ineffective assistance of counsel claim, Toles' third assignment of error is overruled.

{¶ 34} Assignment of Error No. 2:

{¶ 35} THE TRIAL COURT ERRED WHEN IT SENTENCED MARCUS TOLES TO A TERM OF IMPRISONMENT BECAUSE THAT SENTENCE IS NOT SUPPORTED BY THE RECORD IN THIS CASE.

{¶ 36} In his second assignment of error, Toles argues that it was improper for the trial court to sentence him to a total aggregate five-year prison term. We disagree.

{¶ 37} "[A]n appellate court does not review the sentencing court's decision for an abuse of discretion." *State v. Scott,* 12th Dist. Clermont Nos. CA2019-07-051 and CA2019-

07-052, 2020-Ohio-3230, ¶ 54, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 10. Rather, as this court first stated in *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, the standard of review set forth in R.C. 2953.08(G)(2) shall govern all felony sentences. *Id.* at ¶ 6. Pursuant to that statute, this court may increase, reduce, "or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing," if this court clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

{¶ 38} "R.C. 2953.08(G)(2) is unambiguous and definite." *Marcum* at ¶ 9. To that end, "R.C. 2953.08(G)(2)(a) does not authorize an appellate court to review *any* and *all* findings of the trial court made during sentencing." (Emphasis sic.) *State v. Sallis*, 12th Dist. Clermont No. CA2019-12-092, 2020-Ohio-3924, ¶ 6. This includes "the purposes and principles of sentencing set forth in R.C. 2929.11 and R.C. 2929.12." *Id.* at ¶ 15. Rather, "according to the plain language of the statue, the *only* findings this court has authority to review are those the trial court makes specific to R.C. 2929.13(B) or (D), R.C. 2929.14(B)(2)(e) or (C)(4), or R.C. 2929.20(I)." (Emphasis sic.) *Id.* at ¶ 7. Therefore, applying the plain language of R.C. 2953.08(G)(2), we may vacate or modify a felony sentence only if this court determines by clear and convincing evidence that: (1) the record does not support the trial court's findings under those specific, enumerated, statutes; or (2) the sentence is otherwise contrary to law. *Marcum* at ¶ 1.

{¶ 39} Toles initially argues his sentence must be reversed because the trial court (1) incorrectly determined that the eight drug trafficking offenses were committed as part of

an organized criminal activity and (2) ignored factors that mitigated his conduct, such as his expressed remorse for his actions. However, although Toles' arguments do concern the seriousness and recidivism factors set forth by the General Assembly in R.C. 2929.12, none of Toles' arguments implicate findings made under the relevant statutes set forth in R.C. 2953.08(G)(2)(a). "R.C. 2953.08(G)(2)(a) provides no authorization for a review of non-enumerated findings made by the trial court." *Sallis* at ¶ 11. Therefore, in accordance with plain language set forth in R.C. 2953.08(G)(2), and as explained by Justice Kennedy in a concurring opinion she authored in *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, ¶ 38-43, we do not have the statutory authority to review whether the record supports the trial court's findings under R.C. 2929.12. *Sallis* at ¶ 15.

{¶ 40} But, while this court does not have the statutory authority to review whether the record supports the trial court's findings under R.C. 2929.12, this court does have the statutory authority to review whether the trial court's sentencing decision is clearly and convincingly contrary to law under R.C. 2953.08(G)(2)(b). *Id.* at ¶ 8. A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8; *State v. Durham*, 12th Dist. Warren No. CA2013-03-023 2013-Ohio-4764, ¶ 42.

{¶ 41} The record is clear, and Toles does not dispute, that the trial court considered the requisite factors set forth in R.C. 2929.11 and 2929.12 prior to issuing its sentencing decision. The trial court in fact specifically stated at the sentencing hearing, as well as within its sentencing entry, that it had considered both statutes prior to issuing its sentencing decision. The record is also clear, and Toles does not dispute, that the trial court properly imposed an optional three-year term of postrelease control and sentenced him within the

permissible statutory range for each of the nine offenses for which he was found guilty. Therefore, because the record indicates the trial court properly considered the necessary sentencing statutes, R.C. 2929.11 and 2929.12, correctly imposed an optional three-year postrelease control term, and accurately sentenced Toles within the permissible statutory range , the trial court's decision to sentence Toles to a total aggregate five-year prison term is not clearly and convincingly contrary to law.

{¶ 42} Toles also argues the trial court's sentencing decision  must be reversed because the trial court unreasonably relied on a four-year-old presentence investigative report ("PSI") when issuing its sentencing decision.  However, pursuant to Crim.R. 32.2 and R.C. 2951.03(A)(1), the trial court was not required to order a PSI at all, let alone an updated PSI, prior to issuing its sentencing decision.  A PSI is only required "in a felony case in which an offender is sentenced to community control sanctions.  In all other cases, the decision whether or not to order a [PSI] is left to the trial court's sound discretion." *State v. Pottorf*, 12th Dist. Warren No. CA2014-03-046, 2014-Ohio-5399, ¶ 24, citing *State v. Adams*, 37 Ohio St. 3d 295, 297 (1988).  Therefore, contrary to Toles' claim, it was not unreasonable for the trial court to rely on a four-year-old PSI when issuing its sentencing decision.  This is particularly true here when considering the PSI at issue included an updated history of Toles' criminal conduct.  Accordingly, finding no merit to any of the arguments advanced by Toles herein, Toles' second assignment of error lacks merit and is overruled.

{¶ 43} Judgment affirmed.

PIPER, J., concurs.

M. POWELL, P.J., concurs separately.

**M. POWELL, P.J., concurring separately.**

{¶ 44} I am in complete agreement with my colleagues in the majority in the disposition of Toles' first and third assignments of error. However, I write separately regarding Toles' second assignment of error to address the standard of review that an appellate court should employ when reviewing a felony sentence.

{¶ 45} In *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, a unanimous Ohio Supreme Court held that pursuant to the "plain language of R.C. 2953.08(G)(2), * * * an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* at ¶ 1. The court went on to explain that while not all sentences imposed by a trial court require the findings that R.C. 2953.08(G)(2) specifically enumerates, it is nevertheless fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally differential to the sentencing court. *Id.* at ¶ 23. That is, "*an appellate court may modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.*" (Emphasis added.) *Id.*

{¶ 46} The supreme court recently revisited its *Marcum* decision in *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, addressing whether R.C. 2953.08(G)(2) requires a reviewing court to consider if the R.C. 2929.11 purposes and principles of felony sentencing and the R.C 2929.12 seriousness and recidivism factors support a consecutive prison sentence. In a plurality opinion, the supreme court held that R.C. 2929.11 and 2929.12

apply only to the sentence imposed upon an individual offense and have no relevance to the propriety of a consecutive sentence imposed for multiple offenses which must instead comply with R.C. 2929.14(C)(4). Summarizing, the supreme court stated, "[p]aragraph 23 of *Marcum* has no application to this case." *Gwynne* at ¶15.

{¶ 47} In a separate concurrence, Justice Kennedy, joined by Justice DeWine, called for the court to hold that paragraph 23 of *Marcum* is dicta and that R.C. 2953.08(G)(2) does not authorize an appellate court to review a sentencing court's determinations under R.C. 2929.11 and 2929.12. *Id.* at ¶ 44. Despite Justice Kennedy's invitation, none of the other justices joined with her and Justice DeWine in repudiating paragraph 23 of *Marcum*. Although I agree with Justice Kennedy's interpretation of R.C. 2953.08(G)(2), we should continue to apply paragraph 23 of *Marcum* until a majority of the supreme court says otherwise, as we are bound by and constrained to follow the decisions of the Ohio Supreme Court. *State v. Sheets*, 12th Dist. Clermont No. CA2006-04-032, 2007-Ohio-1799, ¶ 16.

{¶ 48} Nonetheless, I concur with the majority in affirming Toles' sentence. In challenging the aggregate five-year prison term imposed by the trial court, Toles relies entirely upon the R.C. 2929.11 purposes and principles of felony sentencing and the R.C. 2929.12 seriousness and recidivism factors. Toles makes no argument that the trial court's consecutive-sentence findings under R.C. 2929.14(C)(4) are not supported by the record. As the supreme court held in *Gwynne*, it is a trial court's findings under R.C. 2929.14(C)(4), not its determinations pursuant to R.C. 2929.11 and 2929.12, that apply on review of a consecutive sentence. Thus, the consecutive aspect of the sentence should be affirmed.

{¶ 49} Even if Toles' second assignment of error might be construed as challenging the individual sentences imposed, I still affirm those sentences. Applying paragraph 23 of *Marcum* to the prison terms imposed for each of the individual offenses, I conclude that Toles' sentence is not contrary to law and is supported by the record. As the trial court

noted, Toles committed eight separate drug trafficking offenses, has a prior criminal history dating to 2014 which includes a felony conviction, has not responded positively to prior remedial interventions, was on probation at the time of the commission of the offenses, has had multiple probation violations arising in different cases from different courts, has demonstrated a pattern of marijuana abuse, and violated the terms and conditions of bond in the instant case. Based upon the foregoing, Toles' sentences are not clearly and convincingly contrary to law as the court properly considered the principles and purposes of sentencing as set forth in R.C. 2929.11, as well as the seriousness and recidivism factors listed in R.C. 2929.12, sentenced Toles within the permissible statutory range for his third-degree felony in accordance with R.C. 2929.14(A)(3)(b), and properly imposed postrelease control.

{¶ 50} Therefore, I join my colleagues in upholding Toles' sentence.