[Cite as *State v. Baker*, 2023-Ohio-1699.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-10-094 |
| | : | O P I N I O N |
| - vs - | | 5/22/2023 |
| | : | |
| JOSHUA BAKER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case Nos. 22CRB01277-A and 22CRB01277-B

Laura Gibson, City of Hamilton Prosecuting Attorney, for appellee.

Engel & Martin, LLC, and Mary K. Martin, for appellant.

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Joshua Baker, appeals from his convictions in the Hamilton Municipal Court for theft and criminal damaging.

{¶ 2} On May 20, 2022, appellant was charged by complaint with one count of theft in violation of R.C. 2913.02(A), a first-degree misdemeanor, and one count of criminal damaging in violation of R.C. 2909.06(A)(1), a second-degree misdemeanor. The charges arose out of allegations that on May 4, 2022, in Hamilton, Butler County, Ohio, appellant

- 1 -

and another individual removed and stole the catalytic converter from Darleena Thenot's Ford F-250 diesel truck, thereby causing harm to the vehicle.

{¶ 3} Appellant entered a not guilty plea to the charges and a bench trial was held on September 28, 2022. At trial, the state presented testimony from Thenot and two city of Hamilton police officers, Officer Alva Leyva and Detective Frank Botts. Thenot testified that she lives on Millville Avenue in Hamilton, Ohio. Sometime between 5:15 a.m. and 5:30 a.m. on May 4, 2022, she was awakened by a "very loud metal against metal sawing sound." Thenot went to investigate the sound, stepping out on her balcony. When she looked down upon the street where her white Ford F-250 was parked, she observed a man on all fours on the ground near her truck. Both the truck and the man were visible as they were illuminated by streetlights. Thenot called 9-1-1 and reported that "somebody was taking the converter off of [her] truck," explaining that she knew what was happening because she is a "car girl." She provided a description of the man she saw to the 9-1-1 dispatcher, stating he was wearing "dark clothing, a shirt and bottoms" and had "buzzed-off blonde hair."

{¶ 4} By the time Thenot went downstairs and outside, she saw that the man had put on a ski mask. Thenot also saw a second individual in a ski mask who was working with the first man to remove the catalytic converter. Thenot observed sparks coming from under her F-250 and then observed the second individual lift up the catalytic converter and show it to the other man before they both ran away from her home. Thenot ran after the two individuals and saw them get into a charcoal, four-door Acura. She returned to her home after the Acura drove off and provided a statement about the event to the police officers who had been dispatched to the scene.

{¶ 5} Later that morning, Thenot went to work at a dental clinic located approximately one block behind her home. Next door to the clinic was an automotive store. When she left the clinic to get lunch, she observed the man with the buzzed-off blonde hair

standing next to a charcoal Acura. The man retrieved an item from the backseat of the Acura and carried it into the automotive store. Thenot testified that though she did not "know exactly" what the man carried into the store, it looked like a catalytic converter. Thenot called the police to report the man's presence at the store, but before the police arrived, the man had exited the automotive store still carrying the item, entered his car, and drove away.

{¶ 6} Thenot later spoke with Robert Lewis, the owner of the automotive store. He showed her a picture of appellant on Facebook and Thenot identified appellant as the man with buzzed-off blonde hair that she had seen take her catalytic converter and then later enter the automotive store. Thenot informed the police of appellant's name and, on May 18, 2022, she identified appellant in a six-man photo lineup administered by Officer Leyva. Thenot testified that prior to the May 4, 2022 incident, she had never before seen appellant and did not know his name.

{¶ 7} A few days after her catalytic converter had been stolen, Thenot moved her truck and found a flashlight underneath it. She provided the flashlight to Detective Botts.

{¶ 8} Thenot testified that the theft of her catalytic converter caused harm to her F-250, as she had to purchase a $100 part to "straight pipe" the vehicle so it could be driven. She also testified that she had been advised that it would cost between $2,800 and $3,200 to replace the whole converter system. Photographs of Thenot's damaged vehicle and photographs demonstrating how the streetlights illuminated her parked truck were admitted into evidence.

{¶ 9} Detective Botts testified that he investigated Thenot's report of a stolen catalytic converter. After speaking with Lewis, Detective Botts created the photo lineup that contained appellant's picture. He had Officer Leyva, an officer with no knowledge or involvement in the investigation, administer the lineup to Thenot. Detective Botts also had

the flashlight Thenot recovered dusted for fingerprints, but no fingerprints could be found on the item. On cross-examination, Detective Botts admitted that in Thenot's initial statement to him, she had not described appellant as having any tattoos. However, on a later occasion, she mentioned appellant having tattoos.

{¶ 10} Officer Leyva testified that she administered the photo lineup to Thenot and that Thenot had selected appellant's picture by circling the photo and initialing below it. Thenot "did not tell" Officer Leyva anything when the test was administered, including that Thenot had previously viewed a picture of appellant on Facebook.

{¶ 11} At the conclusion of the state's case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied his motion. Thereafter, appellant rested his defense without calling any witnesses. Following closing arguments, the trial court found appellant guilty of both theft and criminal damaging. Appellant was sentenced to concurrent jail terms of 180 days, with 60 days suspended, for the theft offense and 90 days, with 90 days suspended, for the criminal damaging offense. He was also sentenced to two years of supervised community control.

{¶ 12} Appellant appealed his conviction, raising two assignments of error for review.

**Denial of Request for a Continuance**

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT'S REQUEST FOR A CONTINUANCE.

{¶ 15} On the day of his trial, appellant orally requested a continuance. He contended that a continuance was necessary as (1) he had evidence to present that he had thus far been unable to obtain, (2) he had not been able to consult with his appointed attorney, felt that he was being "misrepresented," and wished to hire counsel, and (3) he had been and was still sick. The court recessed proceedings to allow appellant to converse

with his appointed attorney, but otherwise denied appellant's request for a continuance, noting that "the case has been set for a trial for awhile and the witnesses are here and ready to go." Appellant contends the trial court's denial of a continuance was "unreasonable" and an abuse of the court's discretion, as "[t]here would have been little to no prejudice to the State * * * as not all their witnesses were even present."

{¶ 16} "A trial court has broad discretion in determining whether to grant or deny a continuance." *State v. Bullock*, 12th Dist. Clermont No. CA2005-04-031, 2006-Ohio-598, ¶ 12, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). This court will not reverse the trial court's decision to deny a defendant's motion for a continuance absent an abuse of that discretion. *State v. Glowka*, 12th Dist. Butler No. CA2012-10-203, 2013-Ohio-3080, ¶ 8. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "A decision is unreasonable where a sound reasoning process does not support it." *State v. Miller*, 12th Dist. Butler No. CA2016-01-007, 2016-Ohio-7360, ¶ 7.

{¶ 17} While there is no "bright-line test" for determining whether a motion for a continuance should be granted, the Ohio Supreme Court has set forth several factors as guidance for the trial court. *State v. Simmons*, 12th Dist. Warren No. CA2020-10-069, 2021-Ohio-3563, ¶ 59. These factors include, but are not limited to, "the length of the requested delay, whether other continuances have been requested and received, the inconveniences likely to result, the reasons for the delay, and whether the defendant contributed to the circumstances giving rise to the need for delay." *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 18.

{¶ 18} The record reveals that appellant was arrested on a warrant on June 16, 2022, and was subsequently arraigned on June 29, 2022. At that time, counsel was appointed to him and the case was continued to July 6, 2022. On July 6, 2022, the case was continued

until August 3, 2022. On August 3, 2022, the matter was scheduled for a trial on August 31, 2022. On August 31, 2022, appellant moved for a continuance "to prepare case." The trial was rescheduled for September 28, 2022.

{¶ 19} Based on the foregoing sequence of events, it is clear that appellant had 91 days to consult with his appointed counsel. After appointed counsel received the state's discovery response, he requested and was granted a continuance of trial to prepare appellant's case. Appellant was then granted time at the beginning of trial to consult with his attorney. At no point prior to the day of trial did appellant indicate any dissatisfaction with his appointed counsel or otherwise indicate a desire to retain other counsel.

{¶ 20} Appellant also claimed he needed a continuance to obtain evidence. However, appellant never specified what evidence he was unable to obtain in the time frame between counsel being appointed and the September 28, 2022 trial date. Further, there is nothing in the record before us indicating appellant informed his counsel of the evidence he wanted obtained or that counsel failed to take steps to investigate or obtain said evidence. *See State v. Toles*, 12th Dist. Madison No. CA2019-07-018, 2020-Ohio-4267, ¶ 25-27 (finding the trial court did not abuse its discretion in denying defendant a continuance on the day of trial where the defendant did not inform his appointed counsel of certain witnesses who would allegedly assist in his defense until shortly before trial commenced).

{¶ 21} Finally, appellant asked for a continuance because "I'm sick today, too, sir, I've been sick for three days." Appellant did not offer any proof or explanation of his illness beyond this statement. While appellant may have felt under the weather, the record clearly shows he was able to attend and participate in the proceedings against him by consulting with his attorney and by addressing the trial court.

{¶ 22} Granting a continuance on the day of trial would have resulted in an inconvenience to the state and to the witnesses who had appeared and were ready to

proceed that day. Though one witness, Lewis, failed to comply with the state's subpoena, the state was ready and able to present its case against appellant. Accordingly, under the facts of this case, where the trial court had previously granted defense counsel's request for a continuance of trial, the state's witnesses were present and ready to proceed, the request for a continuance was made only moments before trial was set to commence, and the reasons offered by appellant for wanting the continuance were varied and shifted, we find that the trial court did not act unreasonably or otherwise abuse its discretion in denying appellant's request for a continuance.

{¶ 23} Appellant's first assignment of error is, therefore, overruled.

**Sufficiency of the Evidence**

{¶ 24} Assignment of Error No. 2:

{¶ 25} THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY * * * BECAUSE THE FINDING OF GUILT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 26} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 27} Appellant was convicted of theft in violation of R.C. 2913.02(A)(1), which

prohibits a person, "with purpose to deprive the owner of property or services, [from] knowingly obtain[ing] or exert[ing] control over the property or services * * * [w]ithout the consent of the owner." He was also convicted of criminal damaging in violation of R.C. 2909.06(A)(1), which prohibits a person from knowingly causing or creating a substantial risk of physical harm to any property of another without the other person's consent. Appellant does not dispute any element of these offenses. Rather, he contends that his convictions were not supported by sufficient evidence because the state failed to present evidence identifying him as the perpetrator of the offenses.

{¶ 28} "It is well settled that in order to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime at issue." *State v. Jividen*, 12th Dist. Warren No. CA2020-10-067, 2021-Ohio-2720, ¶ 11. *See also State v. Cook*, 65 Ohio St.3d 516, 526 (1992). "The identity of the accused as the perpetrator of the crime may be established by direct or circumstantial evidence." *State v. Hibbard*, 12th Dist. Butler No. CA2022-09-086, 2023-Ohio-983, ¶ 20. "Circumstantial and direct evidence have the same probative value." *Id.*, citing *State v. Lee*, 12th Dist. Fayette Nos. CA2020-09-014 and CA2020-09-015, 2021-Ohio-2544, ¶ 25.

{¶ 29} Upon reviewing the record, we find that appellant's convictions for theft and criminal damaging are supported by sufficient evidence. The state presented evidence establishing each of the essential elements of the offenses, including the identity of appellant as the perpetrator of the offenses, beyond a reasonable doubt. Thenot testified that after being awakened on May 4, 2022 by a loud metal against metal sawing sound, she went to the balcony and watched as appellant stole her catalytic converter. Thenot explained that illumination from the streetlight allowed her to not only see what appellant was doing and wearing, but she could also see his face and his "buzzed off blonde hair." She was able to provide a description of appellant to the 9-1-1 dispatcher. She then saw

this individual, now wearing a ski mask, get into a charcoal Acura and drive away with her catalytic converter. Later that day, she saw the same man, the man with the buzzed-off blonde hair, standing beside a charcoal Acura. She observed this man enter an automotive store holding what appeared to be a catalytic converter. She later spoke with the owner of the automotive shop and was shown a Facebook picture of appellant by the shop owner. Thenot confirmed the individual in the picture—appellant—was the person who had damaged her car by stealing the converter. A few days later, Thenot picked appellant's picture out of a police lineup.

{¶ 30} Appellant maintains that Thenot's identification is not trustworthy, as she learned of appellant's name from the Facebook photograph the automotive shop owner showed her. He contends that "[w]ithout someone else telling Ms. Thenot who they believed was the individual involved in the theft, Ms. Thenot would not have been able to identify appellant or anyone as the individual she believed to be involved in the theft of her truck's catalytic converter." However, the fact that Thenot learned of appellant's name from another person does not diminish her recognition of appellant as the person who committed the theft and criminal damaging offenses. Thenot observed appellant's face the morning of the offenses and when he went into the automotive repair shop. She was then able to identify him in a photo lineup as the perpetrator of the crimes. Based on Thenot's testimony and her identification of appellant in a photo lineup, the trial court, as a rational trier of fact, could have found appellant's identification as the individual who committed the crimes established beyond a reasonable doubt. Any doubt appellant wished to place on Thenot's identification went to the credibility of her testimony and the weight to be given to such evidence. The trial court judge, as the trier of fact, was in the best position to determine the credibility of witnesses and weight to be given to the evidence as it relates to the perpetrator's identity. *See State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 41.

{¶ 31} Accordingly, for the reasons stated above, we find that the state presented evidence establishing beyond a reasonable doubt that appellant was the perpetrator of theft and criminal damaging offenses. Appellant's convictions are supported by sufficient evidence and his second assignment of error is, therefore, overruled.

### Nunc Pro Tunc Judgment Entry Required

{¶ 32} Having reviewed the record in the present case, we notice and raise, sua sponte, an error in the trial court's Judgment Entry of Conviction for Cases Nos. 22CRB01277-A (theft) and 22CRB01277-B (criminal damaging). The sentencing entries mistakenly indicate that appellant pleaded guilty to theft and criminal damaging, even though the trial court found appellant guilty of the offenses following a bench trial. Under Crim.R. 36, "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." "The purpose of a nunc pro tunc entry under Crim.R. 36 is to record actions that actually were taken but not correctly recorded." *State v. Glover*, 2d Dist. Montgomery No. 28994, 2021-Ohio-2533, ¶ 11. *See also State v. Stewart*, 12th Dist. Butler No. CA2010-08-215, 2011-Ohio-2211, ¶ 15. Because the judgment entries of conviction contain a mistake as to the manner of conviction, we remand this case and direct the trial court to issue nunc pro tunc sentencing entries reflecting that appellant was found guilty following a bench trial. *See State v. Chasteen*, 12th Dist. Butler No. CA2012-12-247, 2013-Ohio-3573, ¶ 17; *Dublin v. Starr*, 10th Dist. Franklin No. 21AP-173, 2022-Ohio-2298, ¶ 11, fn. 2 and ¶ 67.

{¶ 33} Judgment is reversed and the matter remanded for the limited purpose of issuing nunc pro tunc sentencing entries in Cases Nos. 22CRB01277-A and

22CRB01277-B to correct the manner of conviction. In all other respects, the judgment of the trial court is affirmed.

M. POWELL and BYRNE, JJ., concur.