[Cite as *State v. Moore*, 2025-Ohio-2623.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                                :

    Appellee,                           :          CASE NO. CA2024-10-123

                                  :          <u>OPINION AND</u>
  - vs -                                <u>JUDGMENT ENTRY</u>
                                  :          7/28/2025

ASHER MOORE,                              :

    Appellant.                          :


CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. CRB 2402045


Antoinette M. Dillard, City of Hamilton Assistant Law Director, for appellee.

Christopher P. Frederick, for appellant.


## **O P I N I O N**


**HENDRICKSON, P.J.**

{¶ 1} Appellant, Asher Moore, appeals from his conviction in the Hamilton Municipal Court for criminal trespass.

{¶ 2} On June 14, 2024, appellant was charged by complaint with one count of criminal trespass in violation of R.C. 2911.21(A)(1), a misdemeanor of the fourth degree.

Appellant entered a not guilty plea, and the matter proceeded to a bench trial.

{¶ 3} At trial, the State presented testimony from Charm Street. Street testified that she and appellant previously had a relationship and that appellant was the father of her five-year-old daughter. Street previously had a protection order against appellant, which prohibited him from having contact with her or their daughter. The protection order expired in September 2023. Street was unable to renew the protection order because she did not have appellant's address and could not serve him with the necessary documents. Despite the protection order no longer being in place, appellant knew he was not welcome on her property.

{¶ 4} On May 6, 2024, Street was residing at a home on Cereal Avenue in Hamilton, Butler County, Ohio. That evening, Street was advised by a neighbor that someone was lurking outside her home. Street looked out her dining room window and saw a man right outside the window, about two inches away. Though it was dark outside and the man was wearing a hooded sweatshirt with a medical mask covering part of his face, Street recognized the man as appellant. Street explained that the streetlight gave enough light for her to see the man's face, the man did not have the hood on his sweatshirt pulled up, and he was wearing the medical mask under his nose, leaving "the whole top of his head" visible. Street testified she "[could] see his nose . . . his eyes . . . his cheekbones . . . [and] his forehead." She knew it was appellant. Street testified appellant "knows that he is not allowed on my property." She locked herself and her daughter in a bedroom and called the police.

{¶ 5} By the time officers arrived on scene, appellant had already left the area. She gave a statement to the responding officers. A neighbor's Ring doorbell camera recorded a person in the area of her property during the time in question, and this recording was introduced as an exhibit at trial. The recording, however, did not capture a

close-up view of the person's face or that person's activities on Street's property. Street believed there might have been additional security footage showing the person right next to her dining room window, but that footage was not introduced as evidence at trial.

{¶ 6} Two days after the incident, Street served a new application for a protection order on appellant. She indicated she had found his address online, after reviewing court records.

{¶ 7} Appellant presented an alibi defense at trial. He testified that he could not have been the man outside Street's residence on May 6, 2024 as he was at his girlfriend's home on Williams Avenue in Hamilton, Ohio on the evening in question. Appellant claimed that he prepared a meal and played Uno with his girlfriend and her children before he and his girlfriend went to bed together. He denied leaving his girlfriend's home to go to Street's residence, stating he had "no reason to be over there." He indicated he has "never" been to Street's home and "never will, because I know how she is."

{¶ 8} Appellant's girlfriend, Heather Murphy, testified that appellant was with her at her home on May 6, 2024. She indicated that she and appellant followed their usual routine that evening, which included cooking dinner, spending time with her children, watching movies, and going to bed around 10:30 or 11:00 p.m. She indicated she remembered the events of May 6, 2024 because the next day she and appellant had to cancel plans to go to a Cincinnati Reds game after appellant was arrested on an unrelated matter. She indicated appellant was with her the "entire time" on the evening of May 6, 2024, and he was not in the vicinity of Street's residence.

{¶ 9} After considering the foregoing testimony and reviewing the Ring video recording, the trial court found appellant guilty of criminal trespass. In finding appellant guilty, the court stated, in pertinent part, the following:

[F]rom the day that we had this video evidence, where

someone is walking in front of her house, that's the day the person walked up to the house. Well, that person walks up to her house and looks in her window, that person did not have privilege to be there.

And so the only real issue is whether or not the State has proven identity in this case by proof beyond a reasonable doubt. And they didn't – they did not do that with the video evidence. The video evidence doesn't show who the – who the person is. It shows that there is a person.

And the real evidence of who that person was, the believable evidence came from Ms. Street, when she testified that she looked out the window and she saw the Defendant there. And she was within inches of him, and she immediately ran to her bedroom and locked herself in the bedroom so he couldn't get her.

. . .

[S]he wasn't equivocal about it. She wasn't "it might have been him, it looked like him." She knew who it was.

The court further noted that it had considered appellant's alibi defense but "didn't believe that alibi defense at all." The court proceeded to sentence appellant to 30 days in jail, with 15 days suspended, two years of community control, and a fine of $100.

{¶ 10} Appellant appealed his conviction, raising the following as his sole assignment of error:

{¶ 11} [APPELLANT'S] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} Appellant argues his conviction for criminal trespass was against the manifest weight of the evidence as Street's identification of him as the perpetrator of the offense was unreliable, she had motive to falsely claim that he had trespassed as a means of obtaining his address in order to serve a protection order, and he had presented a credible alibi defense.

{¶ 13} A manifest weight of the evidence challenge examines the "inclination of

the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire trial record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.). "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 2011-Ohio-5226, ¶ 81 (12th Dist.), quoting *State v. Walker*, 2007-Ohio-911, ¶ 26 (12th Dist.). An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest injustice when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶ 14} Appellant was convicted of criminal trespass in violation of R.C. 2911.21(A)(1), which provides that "[n]o person, without privilege to do so, shall . . . [k]nowingly enter or remain on the land or premises of another." A person acts "knowingly" when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 15} "Privilege is the distinguishing characteristic between unlawful trespass and lawful presence on the land or premises of another." *State v. Roland*, 2013-Ohio-1382, ¶ 17 (12th Dist.). Privilege is "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12). "Where no privilege exists, entry constitutes

trespass." *State v. Lyons*, 18 Ohio St.3d 204, 206 (1985).

{¶ 16} Having thoroughly reviewed the record in the present case, we find that appellant's conviction for criminal trespass is not against the manifest weight of the evidence. Street's testimony, as believed by the trial court, established that appellant was on her property, only inches from her dining room window, despite him knowing that he did not have permission to be on her property. Although it was dark outside and appellant was wearing a medical mask, Street got a good look at appellant's face. Street explained that streetlights provided sufficient lighting for her to observe appellant's facial features, which were visible since appellant was wearing the mask below his nose. Street was obviously familiar with appellant, as the two were in a prior intimate relationship and have a child together.

{¶ 17} Appellant challenges the credibility of Street's testimony, arguing she had a motive to falsely claim that he had trespassed as a means of obtaining his address in order to serve a protection order. He further argues that the weight of the evidence demonstrates that he could not have committed the offense, as he was at his girlfriend's house on the evening of May 6, 2024. Appellant's alibi defense and the suggestion that Street had motive to lie were issues addressed at trial through appellant's testimony, Murphy's testimony, and defense counsel's cross-examination of Street. The trial court found Street a "believable" or credible witness. The court dismissed the suggestion that Street had lied about events, noting that Street had not been "equivocal" about the events or her identification of appellant. Conversely, the court found that appellant's alibi defense was not believable, noting certain inconsistencies in appellant's and Murphy's testimony as it related to the activities they engaged in on May 6, 2024. For instance, the court noted that appellant had indicated he cooked dinner and played Uno that evening, whereas Murphy indicated her daughter and appellant had cooked dinner before she and appellant

watched movies together.

{¶ 18} "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 2011-Ohio-6529, ¶ 17 (12th Dist.). "[T]he trial court, as the trier of fact, is best able to view witnesses and observe their demeanor, gestures, and voice inflections in weighing witness credibility . . . ." *State v. Burkhead*, 2009-Ohio-4466, ¶ 19 (12th Dist.). Here, the trial court clearly found Street to be a credible witness and believed her testimony that appellant, without privilege to do so, knowingly entered on her property.

{¶ 19} Accordingly, based on the evidence presented at trial, we find that appellant's conviction for criminal trespass was not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled.

{¶ 20} However, having reviewed the record in the present case, we notice and raise, sua sponte, an error in the trial court's Judgment Entry of Conviction. The sentencing entry mistakenly indicates appellant pled guilty to criminal trespass even though the trial court found appellant guilty of the offense following a bench trial. Under Crim.R. 36, "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." "'The purpose of a nunc pro tunc entry under Crim.R. 36 is to record actions that were taken but not correctly recorded.'" *State v. Rodriguez*, 2024-Ohio-5632, ¶ 23 (12th Dist.), quoting *State v. Baker*, 2023-Ohio-1699, ¶ 32 (12th Dist.). As the judgment entry of conviction contains a mistake as to the manner of conviction, we remand this case and direct the trial court to issue a nunc pro tunc sentencing entry reflecting that appellant was found guilty following a bench trial. *Id.*; *State v. Bowling*, 2025-Ohio-1693, ¶ 19 (12th Dist.); *State v. Geter*, 2025-Ohio-2100, ¶ 16 (12th Dist.).

{¶ 21} Judgment is reversed and the matter is remanded to the Hamilton Municipal Court for the limited purpose of issuing a nunc pro tunc sentencing entry to correct the manner of conviction. In all other respects, the judgment of the trial court is affirmed.

PIPER and BYRNE, JJ., concur.

_____

# J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed as to the sentencing entry only, and this cause is remanded for the limited purpose of issuing a nunc pro tunc sentencing entry to correct the manner of conviction according to law and consistent with the above Opinion. In all other respects, the judgment of the trial court is affirmed.

It is further ordered that a mandate be sent to the Hamilton Municipal Court for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 100% to appellant.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Matthew R. Byrne, Judge