[Cite as *State v. Ward*, 2020-Ohio-5054.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-12-131 |
| | : | O P I N I O N |
| - vs - | | 10/26/2020 |
| | : | |
| LUCAS WARD, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CR34715


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Alexander, Wagner & Kinman, Maxwell D. Kinman, 423 Reading Road, Mason, Ohio 45040, for appellant


**PIPER, J.**

{¶1}  Appellant, Lucas Ward, appeals his conviction in the Warren County Court of Common Pleas for sexual battery.

{¶2}  Ward and the victim resided in the same home.  The victim, who slept on an air mattress in the living room, awoke one night to find Ward kneeling next to her with his finger inside her vagina.  Upon the victim's waking, Ward jumped away and threw a blanket

over her. The victim felt something wet on her pajama shorts and went to the bathroom to change clothing. She then left the home.

{¶3} The victim drove to a nearby church and reported the incident to police. The police directed the victim to have a rape examination performed at the hospital, which she did. The victim's pajama set was also sent to a laboratory for testing. While the laboratory testing revealed the existence of male DNA on the victim's body and clothing, the testing could not determine to whom the male DNA belonged.

{¶4} After speaking with the victim on the night of the incident, the police questioned Ward. Ward denied any sexual conduct with the victim. Instead, Ward told police that he noticed that the victim's shorts were pulled over, exposing her buttocks. He told police that he may have brushed the victim's buttock or hip when he tried to place a blanket over her so that if the children in the house awoke, they would not see her exposed buttocks.

{¶5} Ward was charged with one count sexual battery, and pled not guilty. The matter proceeded to trial, after which, the jury found Ward guilty. The trial court sentenced Ward to community control and designated him a Tier III sexual offender. Ward now challenges his conviction, raising the following assignment of error:

{¶6} THE CONVICTION OF THE APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} Ward argues in his assignment of error that his conviction for sexual battery was against the manifest weight of the evidence.

{¶8} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Thomin*, 12th Dist. Butler Nos. CA2019-11-188 and CA2019-12-199, 2020-Ohio-4625, ¶ 18. To determine whether a conviction is against the manifest

weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168.

{¶9} While a manifest weight of the evidence review requires this court to evaluate credibility, the determination of witness credibility is primarily for the trier of fact to decide. *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 30. This court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶10} Ward was convicted of sexual battery in violation of R.C. 2907.03(A)(3), which prohibits one from engaging in sexual conduct with another when "the offender knows that the other person submits because the other person is unaware that the act is being committed."

{¶11} After reviewing the record, we find that Ward's conviction was not against the manifest weight of the evidence. The victim testified that on the night of the incident, she awoke to find Ward kneeling next to her and that he had one of his fingers inside her vagina. She further testified that she knew it was Ward's finger because his hands were "right there" by her vagina, and that the crotch of her shorts was pushed to the side. The victim testified that when she woke up, Ward threw a blanket over her and dove onto the couch. She noticed that he was wearing only boxers, whereas before she went to bed, Ward had been wearing shorts as well.

{¶12} The victim also testified that her pajama shorts were wet, but that it was not urine. The victim then described changing clothing, leaving the home, and calling police. She also recalled having a rape examination performed the morning after the incident, and that she gave police the pajama set she was wearing at the time of the incident.

{¶13} The state also called a Deputy Sheriff with the Warren County Sheriff's Office who testified that he responded to the church where the victim had called to report the incident. He testified that when he encountered the victim, she was "upset and crying." The deputy also testified that he went to the victim's home and encountered Ward, who was "calm" and did not ask questions about the police presence at his home. Ward also went with police to the police station without asking the purpose.

{¶14} The state also presented testimony from a DNA expert regarding the laboratory testing performed on samples taken from the victim's body and clothing. The expert testified that there was a small quantity of male DNA on an external vaginal sample as well as the victim's pajama shorts.

{¶15} Ward testified in his own defense, and told the jury that his only interaction with the victim that night was to put a blanket over her because her "ass was hanging out." When asked directly whether he inserted his finger into the victim's vagina, Ward responded, "no, I didn't." Ward also presented evidence that the victim had mental health issues and asserted that her allegations were a product of such issues.

{¶16} The jury was in the best position to judge the credibility of the witnesses, mainly the victim and Ward. By virtue of its verdict, the jury believed the victim's testimony and did not find Ward credible when he denied having had sexual conduct with the victim. We will not disturb the jury's credibility determination.

{¶17} Moreover, the jury heard extensive testimony regarding the victim's mental health issues, and was able to determine based upon the evidence presented whether the

allegations against Ward were a result of mental health issues or if the incident occurred the way in which the victim reported.

{¶18}  After reviewing the record, we find that the jury did not clearly lose its way nor create such a manifest miscarriage of justice that Ward's conviction must be reversed and a new trial ordered.  We therefore overrule Ward's single assignment of error.

{¶19}  Judgment affirmed.


M. POWELL, P.J., and RINGLAND, J., concur.