[Cite as *State v. Baker*, 2021-Ohio-272.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-08-086 |
| | : | O P I N I O N |
| - vs - | | 2/1/2021 |
| | : | |
| JOSHUA BAKER, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 20CRB02319


Neal D. Schuett, City of Hamilton Prosecuting Attorney, 345 High Street, Hamilton, Ohio 45011, for appellee

Engel & Martin, LLC, Mary K. Martin, 4660 Duke Drive, Suite 101, Mason, Ohio 45040, for appellant



**PIPER, J.**

{¶1} Appellant, Joshua Baker, appeals his domestic violence conviction in the Hamilton Municipal Court.

{¶2} Baker and the victim had known each other for 28 years and had four children together, though the two never married. Their relationship was turbulent, and Baker had a history of verbally abusing the victim. Baker also threw a rock through the window where

the victim lived with her daughter, and Baker blinded the victim in her right eye.

{¶3} In late June 2020, Baker sent a text message to the victim after the two argued about child support. In the text message, Baker said that he was going to kill the victim. In separate messages, Baker also threatened to cut the brake lines in the victim's vehicle and to jeopardize her employment. The victim went to the police on July 2, 2020 to report Baker's threats, and Baker was charged with domestic violence.

{¶4} Baker pled not guilty and waived a jury trial and the matter proceeded to a bench trial. The state presented the victim's testimony, and the trial court found Baker guilty. The trial court sentenced Baker to 30 days in jail. Baker now appeals his conviction, raising the following assignments of error.

{¶5} Assignment of Error No. 1:

{¶6} THE VERDICT WAS AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE AS THE STATE FAILED TO ESTABLISH THAT A FAMILY MEMBER BELIEVED THAT APPELLANT WOULD CAUSE IMMINENT PHYSICAL HARM.

{¶7} Baker argues in his first assignment of error that his conviction is against the manifest weight of the evidence and is not supported by sufficient evidence.

{¶8} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence presented, if believed by the trier of fact, would support a conviction. *State v. Gross*, 12th Dist. Preble No. CA2018-01-001, 2018-Ohio-4557, ¶ 15. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Baikov*, 12th Dist. Fayette No. CA2019-11-023, 2020-Ohio-4876, ¶ 13.

{¶9} For sufficiency of the evidence purposes, and when looking at the evidence in a light most favorable to the prosecution, we need only look to the testimony elicited by

the state to determine if it provided evidence sufficient to prove the essential elements of the crime. However, as Ohio courts have acknowledged, "it is not our duty to weigh the evidence" during this inquiry. *State v. Tackett*, 4th Dist. Jackson No. 04CA12, 2005-Ohio-1437, ¶ 16.

{¶10} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶11} Questions regarding witness credibility and weight of the evidence "are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶12} Baker was convicted of domestic violence in violation of R.C. 2919.25(C), which provides, "no person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." For a violation of R.C. 2919.25(C), it must be shown that the victim

believed the offender would cause him or her imminent physical harm at the time the incident took place. *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 21.

{¶13} While the term "threat" is not defined by statute, the Ohio Supreme Court has stated that the term "represents a range of statements or conduct intended to impart a feeling of apprehension in the victim." *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, ¶ 39. The victim's state of mind is an essential element of this crime. *City of Hamilton v. Cameron*, 121 Ohio App.3d 445, 449 (12th Dist.1997). Thus, "there must be some evidence that a victim either stated, or from other evidence it could be inferred, that the victim thought the accused would cause imminent physical harm." *Id.* "Prior acts of violence between a defendant and the victim are highly probative in establishing the victim's belief of impending harm." *State v. Rhoads*, 12th Dist. Clermont No. CA2012-05-040, 2013-Ohio-152, ¶ 29.

{¶14} Baker argues that the state failed to prove that the victim had a reasonable subjective belief he would cause her imminent physical harm at the time the incident took place because the victim waited before reporting the threat to police. We disagree.

{¶15} The victim testified that she was "scared" upon receiving the text message in which Baker threated to kill her and that she feared that Baker would imminently inflict physical harm because she knew "anything is possible with him." The state specifically asked the victim whether she was afraid "when he said he was going to kill you," to which the victim answered, "yes." The state next asked the victim why she was frightened by the text message, and the victim testified, "because I don't want to die." *See State v. Drake*, 135 Ohio App.3d 507, 510 (12th Dist.1999) (finding appellant's statement "I'm going to burn you alive" was sufficient to cause the victim to fear imminent physical harm). The trial court, which was in the best position to judge the victim's credibility, believed the victim when she testified why she feared harm from Baker at the time she received the text message, and

we will not disturb that credibility determination on appeal.

{¶16} The dissent quotes the victim's testimony that she did not believe "Baker was going to come over and kill" her as support that the evidence is insufficient to convict Baker. However, this ignores Baker's other statements to the victim and ignores all reasonable inferences the trier of fact is entitled to make from the evidence as a whole. Furthermore, the statute does not require a fear of imminent *death*, only a fear of imminent *physical harm*. Moreover, imminent "does not mean the offender [will] carry out the threat immediately or be in the process of carrying it out." *State v. McKinney*, 9th Dist. Summit No. 24430, 2009-Ohio-2225, ¶ 11. Instead, imminent harm may include words "hanging threateningly over one's head." *Id.*

{¶17} For example, the Fourth District Court of Appeals affirmed a conviction for domestic violence when an estranged husband threatened his wife by saying, "I'll make sure you get yours." *Tackett*, 2005-Ohio-1437 at ¶ 3. Without weighing the evidence, the appellate court considered that the victim had testified at trial that she believed Tackett intended to cause her physical harm and that "the threat was not conditioned or contingent on some other factor." *Id.* at ¶ 16. Thus, the court determined there was sufficient evidence to support the conviction.

{¶18} The threat before us is similar to that made in *Tackett.* While the victim may not have believed Baker was on his way over to her home to kill her, she testified that she was in fear for her safety because "anything" was possible with Baker. Baker's text was not conditioned upon anything, nor contingent upon other factors that would have limited its threatening manner. Thus, the testimony quoted by the dissent does not establish that the victim did not fear some imminent physical harm or that she was not "scared" for her safety because Baker intended her harm. The dissent's quotation, relying on a single statement elicited on cross-examination, is out of context from the full testimony presented by the

state.

{¶19} The dissent also takes issue with the amount of time between Baker's text message and the victim's report to police. While the record indicates that the victim waited several days to report the text message to police, such did not vitiate the fact that she feared for her life *at the time of the incident* when Baker threatened her. On redirect, the victim explained that after she received Baker's text message, she considered whether Baker merely threatened her or if she needed to go to police in order to seek protection. The victim testified that she went to police because she was "scared."[1] Thus, the passage of time between the threat and when the victim reported it does not mean that she lacked the requisite belief that Baker would cause her imminent physical harm. She feared for her life upon receiving the threat and remained "scared," which prompted her to seek protection.

{¶20} Moreover, there is no indication in the record that the victim's fear subsided or that she no longer feared Baker in the days following the text. Instead, the victim testified that she felt it necessary to involve police even several days later "to protect us" and out of a desire "to be safe for me and my children in the home." The victim's belief that Baker would cause her imminent harm was reasonable, especially when considered in conjunction with Baker's past conduct involving the victim.

{¶21} The state presented evidence that Baker acted aggressively in the past toward the victim, or while in her company, to support the reasonableness of the victim's fear of Baker. The victim testified that Baker engaged in a continual pattern of verbal abuse with her throughout their relationship, including threats and degradation. She also testified that Baker had thrown a rock through a window of the house where she lived with her

---

1. The only reasonable inference from this testimony is the victim was considering if her fear was based upon an "empty" threat as opposed to a reason for her to be scared. The fear not subsiding, she obviously felt compelled to seek protection.

daughter. The victim testified that Baker did this because he was unhappy with people inside the house, specifically his daughter's boyfriend. The victim also testified that over the course of her relationship with Baker, he had on more than one occasion shown violence toward her. It was Baker's conduct that blinded the victim's right eye.

{¶22} Despite no threat being made on the day the victim reported Baker's death-threat, the evidence regarding Baker's violent conduct demonstrates the reasonableness of the victim's fear that Baker would harm her. *See State v. Campbell*, 12th Dist. Butler No. CA2007-12-313, 2008-Ohio-5542, ¶ 16 (affirming domestic violence conviction despite defendant not threatening victim where the victim was nonetheless afraid of defendant during the incident "because he was angry and upset" given his past behavior when angry and upset).

{¶23} Thus, we find that the state presented sufficient evidence that, when viewed in a light most favorable to the prosecution, demonstrates any rational trier of fact could have found the essential elements of domestic violence proven beyond a reasonable doubt. We also find that this is not the exceptional case in which the evidence weighs heavily against the conviction. Thus, Baker's first assignment of error is overruled.

{¶24} Assignment of Error No. 2:

{¶25} THE TRIAL COURT ERRED IN ADMITTING 404(B) EVIDENCE, TO THE PREJUDICE OF APPELLANT.

{¶26} Baker argues in his second assignment of error that the trial court erred in admitting "other acts" evidence in violation of Evid.R. 404(B).

{¶27} "The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law" that is reviewed de novo. *State v. Hartman*, Slip Opinion No. 2019-0184, 2020-Ohio-4440, ¶ 22. However, some aspects of the analysis require employment of the trial court's discretion, such as addressing whether the evidence is prejudicial. *Id.* at ¶ 30.

Thus, we apply a mixed standard of review when addressing the admission of other-acts evidence. *Id.* While a de novo review requires this court to review the matter anew, an abuse of discretion standard requires us to determine whether the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

{¶28} Evid.R. 404(B) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶29} "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts. Thus, while evidence showing the defendant's character or propensity to commit crimes or acts is forbidden, evidence of other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue. *Hartman*, 2020-Ohio-4440 at ¶ 22.

{¶30} The Ohio Supreme Court has recently addressed how trial courts must analyze other-acts evidence. First, "the court must evaluate whether the evidence is relevant *to the particular purpose* for which it is offered." (Emphasis sic.). *Id.* at ¶ 26. "The nonpropensity purpose for which the evidence is offered must go to a 'material' issue that is actually in dispute between the parties." *Id.*

{¶31} Next, "there must be substantial proof that the alleged similar act was committed by the defendant." *Id.* at ¶ 28. "Similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id.*

{¶32} Lastly, "the trial court must determine whether the proffered evidence— though admissible under Evid.R. 404(B)—is nevertheless more prejudicial than probative." *Id.* at ¶ 29. In so determining, trial courts should consider how disputed the evidence is that

is being offered and whether the prosecution is able to present alternative evidence to prove the same fact through less prejudicial means. *Id.* at ¶ 31. "Weighing the probative value of the evidence against its prejudicial effect is a highly fact-specific and context-driven analysis. Balancing the risks and benefits of the evidence necessarily involves an exercise of judgment; thus, the trial court's determination should be reviewed for an abuse of discretion." *Id.* at ¶ 30.

{¶33} After reviewing the record, we find that the trial court properly admitted evidence of Baker's past interactions with the victim. This evidence was not used to show Baker's propensity, but rather, to demonstrate why the victim both feared Baker and reasonably believed that he would cause her imminent physical harm.

{¶34} Regarding the Ohio Supreme Court's test as stated above, the evidence in question was relevant to the particular purpose for which it is offered because the state was required to prove the victim's belief that Baker would cause imminent physical harm. As noted above, the victim's state of mind is an integral consideration when determining if the state carried its burden. Evidence that Baker threw a rock through a window when he was angry at someone inside and that Baker blinded the victim demonstrate why it was reasonable for the victim to fear Baker and believe that he would cause imminent physical harm. *See City of Hamilton v. Roberson*, 12th Dist. Butler No. CA98-03-045, 1998 Ohio App. LEXIS 5827, *4 (Dec. 7, 1998) ("to prove the essential element that there was a belief of imminent physical harm, the state may introduce prior acts of violence directed toward the victim"). Thus, the evidence specifically addressed a material issue actually in dispute.

{¶35} Second, the evidence was uncontroverted that Baker committed the acts about which the victim testified. During cross-examination, defense counsel inquired into the rock throwing incident and what the victim understood regarding Baker's *reason* for throwing the rock. However, whether Baker actually threw the rock was not disputed.

- 9 -

Defense counsel did not cross-examine the victim regarding her testimony that Baker blinded her eye, nor did counsel question any of the other testimony regarding the turbulent relationship or violence the victim described. Moreover, the trial court found the victim's testimony credible regarding Baker's violent history, and again, we will not question the trial court's credibility determination.

{¶36} Lastly, the evidence was not more prejudicial than probative given the importance of the victim's state of mind when considering the charge against Baker. The trial court was in the proper position to understand the limited purpose for which the evidence was admitted, and the record indicates that the trial court considered Baker's past behavior for the proper purpose rather than for propensity.

{¶37} Baker objected to the admission of the evidence of the rock and his blinding the victim. However, the trial court properly noted, "one of the elements of the offense is that the State has to show that the Defendant caused her to believe that the offender would cause imminent physical harm, and that's why I think this line of questioning is relevant on the point of whether it would cause her to believe that he would cause imminent physical harm." Thus, the possibility of prejudice was low since the trial court only considered the evidence for a limited, and correct, purpose.

{¶38} The state was required to prove each element of the offense, one of which included understanding why the victim would believe that physical harm was imminent. There was no less prejudicial evidence the state could have offered to prove why the victim feared imminent harm from Baker than his history of violent behavior in her presence.

{¶39} After reviewing the record, we find that the trial court properly admitted the other-acts evidence. Baker's second assignment of error, overruled.

{¶40} Judgment affirmed.

S. POWELL, J., concurs.

M. POWELL, P.J., dissents.

**M. POWELL, P.J., dissenting.**

{¶41} I disagree with my colleagues' finding that the evidence was sufficient to establish the victim believed physical harm was "imminent."

{¶42} To reiterate, R.C. 2919.25(C), the domestic violence statute, provides that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." The *imminency* of the physical harm apprehended by the victim is a necessary element of the offense. The significance of the "imminency" element of the domestic violence statute is apparent when contrasted with R.C. 2903.21(A), the aggravated menacing statute. Aggravated menacing is committed when an offender "knowingly cause[s] another to believe that the offender will cause serious physical harm to the person or property of the other person," with no requirement regarding when the apprehended harm will occur.[2] The "imminency" element of domestic violence is not mere surplusage which may be discounted but must be established by the state in order to sustain a conviction under the statute.

{¶43} The Ohio Revised Code does not define "imminent" in the context of the domestic violence statute. Therefore, a court must look to the plain and ordinary meaning of the word. The *Merriam-Webster* online dictionary defines "imminent" as "ready to take place; happening soon."[3] Other appellate districts have characterized the "imminence"

---

2. R.C. 2903.22, the menacing statute, provides likewise with the exception that the victim's belief involves only "physical harm" as opposed to "serious physical harm."

3. https://www.merriam-webster.com/dictionary/imminent (accessed Jan. 28, 2021).

element of the statute as "near at hand, impending, threatening to occur immediately," *Cincinnati v. Baarlaer*, 115 Ohio App.3d 521, 527 (1st Dist.1996); and "as the belief of the victim that harm would occur immediately or, in the alternative, that the defendant will cause immediate physical harm." *State v. Fisher*, 197 Ohio App.3d 591, 2011-Ohio-5965, ¶ 17 (2d Dist.), citing *State v. Taylor*, 79 Ohio Misc.2d 82, 85 (M.C.1996). "Courts have found that the danger posed by a threat is not imminent where the person making the threat has no means of fulfilling the threat at the time it is made." *State v. Deveny*, 2d Dist. Miami No. 2016-CA-7, 2017-Ohio-560, ¶ 21.

{¶44} The record reflects that Baker's threat was made remotely, by text message, as opposed to having been made in person. The victim testified that she did not know where Baker was when he sent the text message. Furthermore, the victim's two-week delay in reporting the threat to the police circumstantially suggests she did not believe that Baker would act imminently to make good on his threat. Lest there be any doubt, the victim confirmed on cross-examination that she did not call the police immediately because she "didn't think [Baker] was going to come over and kill [her]."

{¶45} In *Hamilton v. Cameron*, 121 Ohio App.3d 445 (12th Dist.1997), we recognized that R.C. 2919.25(C) requires a close temporal nexus between the physical harm apprehended by a victim and the threat. We observed that "'[i]t must be shown by the prosecution that the victim believed the offender would cause her imminent physical harm *at the time the incident took place*.'" (Emphasis added.) *Id.* at 449, quoting *State v. Sayres*, 4th Dist. Washington No. 95CA30, 1997 Ohio App. LEXIS 1257, *4 (Mar. 26, 1997); *see also State v. Collie*, 108 Ohio App.3d 580, 584 (1st Dist.1996).

{¶46} In *State v. Diroll*, 11th Dist. Portage No. 2006-P-0110, 2007-Ohio-6930, the Eleventh Appellate District reversed a conviction for domestic violence in violation of R.C. 2919.25(C) and remanded the matter to the trial court with direction that it enter a judgment

of acquittal, in part because the evidence indicated that the threat of physical harm was not "imminent." Commenting upon the evidence, the court of appeals stated, "there was evidence presented that he was at his mother's residence when he made the threat. Diroll's mother's house and Smith's house are several miles apart, making it less likely that Diroll could 'immediately' or 'at any moment' inflict physical harm upon Smith." *Id.* at ¶ 54.

{¶47} In *Baarlaer*, the defendant was convicted of domestic violence in violation of R.C. 2919.25(C) for calling the victim while incarcerated in the county jail and stating, "as soon as I make bond, I'm going to kick your ass." In finding the threat of physical harm was not imminent and reversing the conviction, the court of appeals noted that when the threat was made, the defendant "was literally behind bars and distant from [the victim]." *Baarlaer,* 115 Ohio App.3d at 528.

{¶48} The victim may very well have feared Baker would harm her based upon the text message threat, their past history, and her knowledge of his propensity to act in a volatile manner. But simply believing a threat of physical harm does not establish the offense, as the belief must be of physical harm that is "ready to take place" or "happening soon." The state failed to present any evidence that Baker had the means to make good on his threats at the time it was made or that the victim believed that she was in imminent danger from Baker. While appellant's texted threat may have violated the law in some respect, such as aggravated menacing in violation of R.C. 2903.21(A), telecommunication harassment in violation of R.C. 2917.21(A)(1) and (6), and/or disorderly conduct in violation of R.C. 2917.11(A)(1), it did not violate R.C. 2929.25(C).

{¶49} Based upon the foregoing, I would sustain the first assignment of error, find the second assignment of error moot, and reverse the trial court's verdict finding Baker guilty of domestic violence in violation of R.C. 2919.25(C).

{¶50} With regard and respect for my colleagues in the majority, I dissent.