[Cite as *State v. Rodriguez*, 2024-Ohio-5632.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-03-038 |
| | : | O P I N I O N |
| - vs - | | 12/2/2024 |
| | : | |
| JONATHAN RODRIGUEZ, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. CRB 23 03303

Brian Harrison, Prosecuting Attorney, City of Hamilton, and Antoinette M. Dillard, Assistant Law Director, City of Hamilton, for appellee.

Christopher P. Frederick, for appellant.

**M. POWELL, J.**

{¶ 1} Appellant, Jonathan Rodriguez, appeals his conviction in the Hamilton Municipal Court for domestic violence.

{¶ 2} On November 1, 2023, appellant was charged by complaint with two counts of domestic violence, both fourth-degree misdemeanors, in two separate cases.

Appellant entered a not guilty plea to the charges and a bench trial was held on February 7, 2024. Trial testimony revealed the following facts.

{¶ 3} Appellant's mother ("Mother") is married to Luis Rodriguez Leiva ("Leiva"). Leiva and Mother reside in Hamilton, Ohio. During the late evening hours of September 11, 2023, while Leiva and Mother were in bed, appellant called them about 30 times regarding borrowing a car. Mother eventually passed the phone to Leiva. Leiva told appellant that they were not lending him the car and that appellant needed to stop bothering them. Appellant then threatened to kill Leiva, made other violent threats, told Leiva he was going to come to their house, and stated, "they're going to need to lock me up because I'm going to do something bad." After being told by Mother that he was not welcome there, appellant stated he could come to their home whenever he felt like it. Concerned, Leiva called 9-1-1 and went to the Hamilton Police Department to report the incident. The following day, November 12, 2023, appellant called Leiva and made several threats. He subsequently drove to Leiva's home. However, Leiva was not home.

{¶ 4} Appellant moved the trial court for acquittal at the close of the state's case-in-chief. The trial court granted appellant's motion for acquittal regarding the November 12, 2023 incident (Case No. CRB2303302) and denied the motion regarding the November 11, 2023 incident (Case No. CRB2303303). Appellant then testified on his own behalf. Appellant admitted repeatedly calling Leiva and Mother late at night on November 11, 2023, to borrow a car and being angry that he could not borrow the car. Appellant admitted he told Leiva that he would kill him but denied he intended to go to their house that night. Appellant explained that while he and Leiva have had several heated arguments in the past, this was their ugliest and most serious argument. Appellant described his demeanor that evening as being the most angry and forceful that he had ever been with Leiva. The recording of Leiva's 9-1-1 call on November 11, 2023, and

- 2 -

some of appellant's calls were played and admitted into evidence.

{¶ 5} Based upon the foregoing, the trial court found appellant guilty of fourth-degree misdemeanor domestic violence and sentenced him to a suspended 30-day jail sentence, two years of community control, and no contact with Leiva.

{¶ 6} Appellant appeals his conviction, raising two assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN OVERRULING MR. RODRIGUEZ'S MOTION FOR ACQUITTAL PURSUANT TO CRIM.R. 29.

{¶ 9} Appellant argues that his domestic violence conviction is not supported by sufficient evidence because the state failed to prove that his threat to kill Leiva was imminent.

{¶ 10} "The review of a court's denial of a motion for acquittal under Crim.R. 29 is governed by the same standard as that used for determining whether a verdict is supported by sufficient evidence." *State v. Listo*, 2010-Ohio-4408, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would support a conviction. *State v. Peyton*, 2017-Ohio-243, ¶ 41 (12th Dist.). The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* In other words, the test for sufficiency requires a determination as to whether the state has met its burden of production at trial. *Id.*

{¶ 11} Appellant was convicted of domestic violence in violation of R.C. 2919.25(C), which provides, "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." For a violation of R.C. 2919.25(C), the state must

prove that the victim believed the offender would cause him or her imminent physical harm at the time the incident took place. *State v. Casey*, 2024-Ohio-689, ¶ 11 (12th Dist.). The state of mind of the victim is an essential element of the crime. *Id.* "Thus, there must be some evidence that a victim either stated, or from other evidence it could be inferred, that the victim thought the accused would cause imminent physical harm." *Id.*

{¶ 12} Appellant argues that his physical harm threat was not imminent because the threat was conveyed through a phone call and not in person and Leiva was aware that appellant placed the call from his home in Covington, Kentucky. Appellant further argues that the threat was conditional because it depended on Leiva and Mother allowing appellant to borrow the car.

{¶ 13} Threat "represents a range of statements or conduct intended to impart a feeling of apprehension in the victim." *State v. Cress*, 2006-Ohio-6501, ¶ 39. Imminent has been defined as "ready to take place," "near at hand," "impending," "hanging threateningly over one's head," or "menacingly near." *State v. Tackett*, 2005-Ohio-1437, ¶ 14 (4th Dist.). Imminent "does not mean that the offender [will] carry out the threat immediately or be in the process of carrying it out." *State v. McKinney*, 2009-Ohio-2225, ¶ 16 (9th Dist.). Rather, the critical inquiry is "whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm." *Tackett* at ¶ 14. A threat is conditional where a prerequisite must occur before the actor intends or is empowered to carry out the threat. *State v. Diroll*, 2007-Ohio-6930, ¶ 56 (11th Dist.).

{¶ 14} We find that appellant's domestic violence was supported by sufficient evidence. Leiva testified he believed that appellant was going to harm him because appellant not only threatened to kill him, he also warned Leiva, "they're going to need to lock me up because I'm going to do something bad." While Leiva lived in Hamilton, Ohio

and told the 9-1-1 dispatcher that appellant lived in Covington, Kentucky, there is no evidence in the record that Leiva knew appellant was in Kentucky when he threatened to kill Leiva. Leiva did not know where appellant was when he placed the call. The fact that Leiva went to the police station to report the incident is evidence of Leiva's belief that physical harm was imminent. *Tackett*, 2005-Ohio-1437 at ¶ 15-16. Moreover, the evidence does not support appellant's assertion that the threat was conditional. Leiva told appellant he could not borrow the car and appellant responded by threatening to kill Leiva. While the threat may have been prompted by Leiva's refusal to let appellant borrow the car, it was not contingent upon appellant borrowing the car such as, "loan me the car or I'll kill you," or "if you don't let me borrow the car, I'll kill you." Construing the evidence in the light most favorable to the state, we find that a rational trier of fact could have found that appellant's threat caused Leiva to believe he would suffer imminent physical harm.

{¶ 15} Appellant's first assignment of error is overruled.

{¶ 16} Assignment of Error No. 2:

{¶ 17} MR. RODRIGUEZ'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 18} Appellant argues that his domestic violence conviction is against the manifest weight of the evidence because the state failed to prove he *knowingly* caused Leiva to believe he would cause him *imminent* physical harm. In support of his argument, appellant asserts that (1) it was unlikely he would go to Mother's house without her consent and at that late hour in the night, (2) the parties were in two separate locations, 20-30 minutes away from one another, (3) appellant's threat was conditional, and (4) despite prior heated discussions, there had never been a history of physical violence between appellant and Leiva. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will

probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 19} To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Peyton*, 2017-Ohio-243 at, ¶ 42. While a manifest weight of the evidence review requires this court to evaluate credibility, the determination of witness credibility is primarily for the trier of fact to decide. *State v. Ward*, 2020-Ohio-5054, ¶ 9 (12th Dist.). Therefore, this court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*

{¶ 20} Upon reviewing the record, we find that appellant's domestic violence conviction is not against the manifest weight of the evidence. The state of mind of the victim is an essential element of the crime. *Casey*, 2024-Ohio-689 at ¶ 11. Although Leiva and appellant lived in two separate states 20-30 minutes away from one another, there is no evidence in the record that appellant was in Kentucky or that Leiva knew appellant was in Kentucky when he threatened to kill Leiva. Leiva did not know where appellant was when he placed the call. The fact that Leiva went to the police station to report the incident is evidence of Leiva's belief that physical harm was imminent. *Tackett*, 2005-Ohio-1437 at ¶ 15-16. Moreover, as we stated above, the evidence does not support appellant's assertion that the threat was conditional. While the threat may have been prompted by Leiva's refusal to let appellant borrow the car, it was not contingent upon appellant borrowing the car. Finally, while there had never been a history of physical

violence between appellant and Leiva, appellant admitted he threatened to kill Leiva, his demeanor that evening was the most angry and forceful he had ever been with Leiva, and this was their ugliest and most serious argument.

{¶ 21} The trial court found that Leiva's testimony was credible. A conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony and evidence presented by the state. *State v. Lunsford*, 2011-Ohio-6529, ¶ 17 (12th Dist.). As the trier of fact, the trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations to judge the credibility of witnesses and the weight to be given the evidence. *State v. Clemmons*, 2020-Ohio-5394, ¶ 24 (12th Dist.). Even though this court may consider the credibility of the witnesses in conducting our manifest-weight analysis, on this record, we do not perceive any justifiable reason to second-guess the credibility determinations made by the trial court. *Id.* The trial court did not lose its way and create a manifest miscarriage of justice in believing the state witnesses' testimony such that appellant's domestic violence conviction must be reversed and a new trial ordered.

{¶ 22} Appellant's second assignment of error is overruled.

{¶ 23} Having reviewed the record in the present case, we notice and raise, sua sponte, an error in the trial court's Judgment Entry of Conviction for Case No. CRB2303303. The sentencing entry mistakenly indicates that appellant pled guilty to domestic violence, even though the trial court found appellant guilty of the offense following a bench trial. Under Crim.R. 36, "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." "'The purpose of a nunc pro tunc entry under Crim.R. 36 is to record actions that actually were taken but not correctly recorded.'" *State v. Baker*, 2023-Ohio-1699, ¶ 32 (12th Dist.), quoting *State v. Glover*, 2021-Ohio-2533, ¶

11 (2d Dist.).  Because the judgment entry of conviction contains a mistake as to the manner of conviction, we remand this case and direct the trial court to issue a nunc pro tunc sentencing entry reflecting that appellant was found guilty following a bench trial.  *Id.*; *State v. Chasteen*, 2013-Ohio-3573, ¶ 17 (12th Dist.).  We note that the Hamilton Municipal Court made the same mistake in its sentencing entry in *Baker*.  *See also State v. Redden*, 2024-Ohio-1088 (12th Dist.).

**{¶ 24}** Judgment is reversed and the matter is remanded to the Hamilton Municipal Court for the limited purpose of issuing a nunc pro tunc sentencing entry in Case No. CRB2303303 to correct the manner of conviction.  *Baker* at ¶ 32.  In all other respects, the judgment of the trial court is affirmed.

BYRNE, P.J., and HENDRICKSON, J., concur.