[Cite as *State v. Oatis*, 2026-Ohio-724.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :      Case No.  25CA9

    v.                           :

EVANDA H. OATIS,                  :      DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.         :

_____

APPEARANCES:

Craig M. Jaquith, Columbus, Ohio, for appellant.[1]

Andrew Anastasi, Chillicothe Assistant Law Director,
Chillicothe, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:2-25-26
ABELE, J.

{¶1}  This is an appeal from a Chillicothe Municipal Court
judgment of conviction and sentence.  Evanda H. Oatis, defendant
below and appellant herein, assigns the following errors for
review:

        FIRST ASSIGNMENT OF ERROR:

        "MR. OATIS'S CONVICTION IS AGAINST THE
        MANIFEST WEIGHT OF THE EVIDENCE."

        SECOND ASSIGNMENT OF ERROR:

        "THE TRIAL COURT ERRED BY ALLOWING PRIOR BAD

---

[1] Different counsel represented appellant during the trial court
proceedings.

ACT TESTIMONY DURING THE STATE'S CASE-IN-
CHIEF, IN VIOLATION OF EVID.R. 404(B)(1)."

{¶2} In October 2024, appellant and his wife, A.C., were in the midst of a divorce. After A.C. had moved out of the marital home, on October 19, 2024 A.C. visited the marital home with her sister and some friends to pack some of her belongings.

{¶3} While A.C. and her companions were working on packing items in the bedroom, appellant arrived. Appellant became upset when he learned that A.C. had not brought the parties' children with her. The situation quickly deteriorated, with appellant allegedly throwing boxes and bleach about the room. Shortly thereafter, A.C. called the police, and appellant left.

{¶4} As a result of this incident, appellant was charged with (1) assault, in violation of R.C. 2903.13, a first-degree misdemeanor, and (2) domestic violence, in violation of R.C. 2919.25(C), a fourth-degree misdemeanor. Appellant entered not-guilty pleas.

{¶5} On April 8, 2025, the trial court held a jury trial. At trial, A.C. testified that on October 19, 2024, she visited the home she formerly shared with appellant to pack her belongings. When she arrived, appellant's sister, Laura, and one of Laura's friends were present. As A.C. and her companions packed her belongings, appellant arrived. According to A.C., appellant ran up the stairs and yelled, "You didn't bring my

kids." At that point, A.C.'s sister pushed her into the closet and closed the door.

{¶6} A.C. remained in the closet because she feared that appellant would harm her. Appellant "was screaming" and instructing her "to come out of the closet." Appellant "was throwing things," and she heard crashing noises. A.C. described appellant's voice as "[e]xtremely loud and aggressive."

{¶7} A.C.'s sister and her friends implored appellant to stop. Appellant's sister also told appellant that he "need[ed] to stop." A.C. was "[e]xtremely terrified" and called the police. Appellant left after he learned that A.C. had called the police.

{¶8} At trial, the prosecutor asked A.C. if appellant had engaged in this type of behavior in the past and A.C. responded, "Specifically, no. But he has been very violent to others in the past."

{¶9} During A.C.'s testimony, the State introduced a video clip that one individual recorded using a cell phone camera. This video clip showed appellant throwing boxes of the items that A.C. had packed, and appellant could be heard yelling. A.C. further stated that the video depicted appellant throwing a lamp at one of her friends and grabbing a container of bleach that he tossed around the room.

{¶10} In his defense, appellant presented testimony from his

sister, Laura.  Laura stated that, during the incident, appellant "was screaming that he just wanted to talk" and said that he "wasn't trying to hurt anybody."  According to Laura, appellant "was concerned about where his kids were."  Laura testified that she did not see appellant throw bleach on anyone or on any items.  Laura further indicated that appellant did not throw items at anyone.  She instead explained that he was "push[ing]" items around the room.

{¶11} Appellant also testified in his defense.  Appellant stated that, when he arrived, he "calmly asked" where his children were.  He indicated that he was "not going to do anything."  Appellant admitted that he tossed boxes around, but denied that he threw them at anyone.  Appellant explained that he tossed boxes around to deflect his anger and stated that he "would rather" toss around boxes than "harm a person."  He further admitted that he threw a lamp "towards knee level."  Appellant described the incident as "a sudden moment of passion."

{¶12} After hearing the evidence, the jury found appellant guilty of domestic violence, but not guilty of assault.  Shortly thereafter, the trial court (1) sentenced appellant to serve five days in jail, (2) imposed 24 months of community control, and (3) ordered appellant to pay court costs.  This appeal followed.

I.

{¶13} In his first assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence.  More specifically, appellant asserts that the State failed to prove beyond a reasonable doubt that he caused the victim to believe that he would cause imminent physical harm to her.

A.

{¶14} A challenge to the manifest weight of the evidence requires a court to evaluate whether the greater amount of credible evidence offered at trial supports the defendant's conviction.  *See State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990) ("Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'").  A court that considers a manifest weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'"  *State v. Beasley*, 2018-Ohio-493, ¶ 208, quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 328.  Reviewing courts also must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  *See Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001); *State v. Murphy*,

2008-Ohio-1744, ¶ 31 (4th Dist.). "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20, quoting *State v. Konya*, 2006-Ohio-6312, ¶ 6 (2d Dist.), quoting *State v. Lawson*, 1997 WL 476684 (2d Dist. Aug. 22, 1997). As the *Eastley* court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. . . .
>
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

2012-Ohio-2179, at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978). Thus, an appellate court will leave the issues of evidence weight and witness credibility to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 2012-Ohio-1282, ¶ 24 (4th Dist.); *accord State v. Howard*, 2007-Ohio-6331, ¶ 6 (4th Dist.) ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and

weight").

{¶15} Accordingly, a judgment of conviction is not against the manifest weight of the evidence when the record contains substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established. *See State v. Leonard*, 2004-Ohio-6235, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193-194 (1998), citing *State v. Eley*, 56 Ohio St.2d 169 (1978), syllabus ("'The question to be answered when a manifest-weight issue is raised is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt'" [emphasis omitted.]). A court may reverse a judgment of conviction only if it appears that the fact finder, when it resolved the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord State v. Brown*, 2025-Ohio-2804, ¶ 31. A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v.*

*Clinton*, 2017-Ohio-9423, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483 (2000).

**{¶16}** In the case at bar, as we explain below, we do not believe that appellant's case is an exceptional case in which the evidence weighs heavily against his conviction. Thus, we do not believe that appellant's conviction is against the manifest weight of the evidence.

B.

**{¶17}** R.C. 2919.25(C) contains the essential elements of the offense of domestic violence, as charged in the case sub judice. The statute provides that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." A victim's belief that the offender will cause imminent physical harm to the victim may be (1) established through the victim's statements, (2) inferred from other evidence, or (3) shown though the totality of the circumstances. *See State v. Yantis*, 2023-Ohio-3820, ¶ 15 (2d Dist.). As used in R.C. 2919.25(C), "physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3); *see State v. Faggs*, 2020-Ohio-523, ¶ 14 (applying the R.C. 2901.01(A)(3) definition of "physical harm" to R.C. 2919.25(A)).

{¶18} In the case sub judice, appellant asserts that the State failed to prove the physical-harm element because the victim did not explicitly state that appellant caused her to believe that he would cause her imminent physical harm. Appellant recognizes that the victim testified that she feared that appellant would cause her "harm," but contends that the victim was required to specify that she believed that appellant would cause her "physical harm."

{¶19} Even though the victim did not explicitly state that she believed that appellant would cause her imminent "physical harm," we believe, after our review, that the evidence supports the conclusion that the victim believed that appellant would cause her imminent physical harm. The victim stated that she remained in the closet because of her fear that appellant would harm her. This statement indicates that the victim remained in the closet to protect herself from physical harm. From this statement, the jury could infer that the victim believed that appellant would cause her imminent physical harm.

{¶20} We further observe that the victim called the police. Courts have recognized that calling police supports a finding that a victim believed that an offender would cause imminent physical harm to the victim. *See State v. Jennings*, 2025-Ohio-5790, ¶ 18 (7th Dist.) ("[c]ontacting the police is evidence of the victim's belief that physical harm is imminent"); *see also*

*State v. Rodriguez*, 2024-Ohio-5632, ¶ 20 (12th Dist.) (reporting the incident to the police evinces a victim's "belief that physical harm was imminent"); *State v. Tackett*, 2005-Ohio-1437, ¶ 15 (4th Dist.) ("the fact that the victim went to the police may serve as evidence that demonstrates the victim's belief that physical harm was imminent").

{¶21} Moreover, the victim's statement that she remained in the closet out of fear, coupled with appellant's conduct and the intensity of the situation, further supports the jury's finding that appellant caused the victim to believe that he would cause her imminent physical harm. The video admitted into evidence shows appellant not simply "push[ing]" boxes around, but instead shows appellant throwing boxes in an angry manner. The other individuals who accompanied the victim to the residence were yelling and imploring appellant to stop. Additionally, one of the victim's friends testified that the victim was "trembling and nervous." Consequently, the testimony presented at trial, along with the video recording of the incident, constitutes ample credible evidence to support the jury's conclusion that the State had established, beyond a reasonable doubt, that appellant caused the victim to believe that he would cause her imminent physical harm. *See State v. Cooper*, 2020-Ohio-3559, ¶ 23 (11th Dist.) (the defendant's conduct in yelling and banging on windows and doors established the victim's belief that the

defendant would cause imminent physical harm to the victim); *see also State v. Monfort*, 2023-Ohio-1024, ¶ 14 (9th Dist.) ("Punching a wall in rage is an implied threat of force and was sufficient to cause [the victim] to believe that [the defendant] was going to cause imminent physical harm.").

**{¶22}** We recognize that appellant presented evidence in his defense that he did not intend to cause physical harm to the victim. However, the jury was free to disbelieve appellant's evidence. *See, e.g., State v. Sims*, 2023-Ohio-1179, ¶ 124 (4th Dist.) (a jury is free to believe all, part, or none of the testimony from any witness who testifies before it). Furthermore, any conflict between appellant's version of the incident and the victim's version does not render his conviction against the manifest weight of the evidence when nothing suggests that the victim's testimony was completely unworthy of belief. *See State v. Cooper*, 2007-Ohio-1186, ¶ 17 (4th Dist.), quoting *State v. Mason*, 2003-Ohio-5785, ¶ 17 (9th Dist.), quoting *State v. Gilliam*, 1998 WL 487085, *4 (9th Dist. Aug. 12, 1998) ("'"When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony."'").

**{¶23}** In sum, after our review we do not believe that the record contains any evidence to suggest that the jury clearly lost its way and committed a manifest miscarriage of justice.

**{¶24}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II.

**{¶25}** In his second assignment of error, appellant asserts that the trial court committed plain error when it allowed the State to introduce prior bad act testimony.  He contends that the victim's testimony that appellant "has been very violent to others in the past" constituted inadmissible propensity evidence.

A.

**{¶26}** A party asserting plain error must demonstrate the following: (1) an error occurred; (2) the error was obvious; and (3) a reasonable probability that the error affected the outcome of the proceeding.  *State v. Echols*, 2024-Ohio-5088, ¶ 50; *see also State v. Rogers*, 2015-Ohio-2459, ¶ 22.  However, even when a defendant demonstrates that a plain error or defect affected the defendant's substantial rights, the Ohio Supreme Court repeatedly has emphasized that courts should "notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'"  *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus; *e.g., State v. Bailey*, 2022-Ohio-4407, ¶ 14 ("the plain-error doctrine is warranted only under exceptional circumstances to prevent

injustice").

B.

**{¶27}** Evid.R. 404(B)(1) precludes the admission into evidence of another crime, wrong, or act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Evid.R. 404(B)(2), however, allows this type of evidence when offered for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Thus, other-acts evidence is not admissible when the sole purpose of the evidence "is to show the accused's propensity or inclination to commit crime."  *State v. Hartman*, 2020-Ohio-4440, ¶ 20, quoting *State v. Curry*, 43 Ohio St.2d 66, 68 (1975), citing 1 Underhill's Criminal Evidence, Section 205, at 595 (6th Ed.1973).  Other-acts evidence is admissible, however, so long as the evidence relates to a permissible purpose, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Evid.R. 404(B)(2).  "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts."  *Hartman*, 2020-Ohio-4440, at ¶ 22.  Accordingly, other-acts evidence is admissible when (1) the evidence is relevant, (2) the evidence is not used "to prove a person's character to show conduct in conformity," (3)

the evidence is offered "for a legitimate other purpose," and (4) the danger of unfair prejudice does not substantially outweigh the probative value of the evidence. *State v. Graham*, 2020-Ohio-6700, ¶ 72, citing State *v. Williams*, 2012-Ohio-5695, ¶ 20.

**{¶28}** In the case at bar, even if we were to conclude that the trial court obviously erred by allowing the victim's testimony that appellant "has been very violent to others in the past,"[2] we do not believe that appellant has demonstrated a reasonable probability that any error affected the outcome of the proceeding. Instead, even without the victim's statement, we believe that the record otherwise contains substantial evidence to support appellant's conviction. As we explained in our discussion of appellant's first assignment of error, the State introduced into evidence a video recording of the incident. The jury had the opportunity to view this video recording. The video shows appellant, while in an agitated state, yell and throw boxes about the room. Appellant's conduct displayed in the video recording, combined with the remaining

---

[2] We additionally find it doubtful that appellant could establish an obvious error. Courts have recognized that, in a prosecution for violating R.C. 2919.25(C), other-acts evidence may be relevant to prove the victim's belief that the defendant would cause imminent physical harm. *See, e.g., State v. Baker*, 2021-Ohio-272, ¶ 33-38 (12th Dist.). Given this precedent, even if we assume that the trial court erred by allowing the victim's statement regarding appellant's past conduct, we do not believe that any error would be an obvious error.

evidence, gave the jury more than ample evidence to conclude, beyond a reasonable doubt, that appellant caused the victim to believe that appellant would cause her imminent physical harm.

**{¶29}** Furthermore, assuming, arguendo, that appellant had demonstrated a reasonable probability that the error affected the outcome of the proceeding, we do not believe that the case at bar involves exceptional circumstances or that recognizing plain error is necessary to prevent a manifest miscarriage of justice. *See Barnes*, 94 Ohio St.3d at 27.

**{¶30}** Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.